UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANE G. LAPAN,

      Plaintiff,

v.                                            CASE NO. 8:05-CV-1061-T-MAP

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.
_____/

## ORDER

Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks review of the Commissioner's decision denying her Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits.[1] Essentially, Plaintiff argues the Administrative Law Judge ("ALJ") erred by failing to establish good cause for discrediting the residual functional capacity opinion of her treating physician. After reviewing the record, I find the ALJ applied the correct legal standards and the decision is supported by substantial evidence. Therefore, Plaintiff's complaint is dismissed and the Commissioner's decision is affirmed.

*Background*

Plaintiff, who was 58 years old at the time of the administrative decision, alleges a disability onset date of December 9, 1998, due to rheumatoid arthritis and asthma. She has a high school education and past relevant work as an accounting clerk and office clerk. Plaintiff filed application for benefits on December 9, 1999. After these applications were denied initially and on reconsideration, Plaintiff requested an administrative hearing. An administrative hearing was held

---

[1] The parties have consented to proceed before me pursuant to 28 U.S.C. § 636(c) (doc. 7).

on March 20, 2001, and the ALJ issued a decision denying Plaintiff benefits. The Appeals Court denied review, and Plaintiff filed this action. The case is now ripe for review.[2]

*Standard of Review*

To be entitled to SSI or disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his

---

[2] The ALJ accurately reports Plaintiff's medical history and I adopt that portion of his decision for purposes of this report and recommendation. (R. 19-22).

prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he/she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

Here, Plaintiff also applied for Disabled Widow's Benefits. The Social Security Regulations require that for a widow to obtain benefits on her deceased husband's work history, she has to meet several additional criteria: 1) claimant must be at least 50 years old; 2) she must show that her disability began no later than seven years after the death of her husband; and 3) she must not have remarried or must meet certain criteria if she is remarried. *See* 20 C.F.R. § 404.335(c), (e).

*Discussion*

3

Plaintiff contends that the ALJ failed to establish "good cause" for not giving substantial or considerable weight to the opinion of her treating physician. Specifically, she maintains that Dr. McCarthy's opinion regarding her Residual Functional Capacity ("RFC") should have been accorded greater weight in her disability determination. Defendant asserts that Plaintiff failed to meet her burden of providing documentation of any impairments and their severity, and a review of the record evidence reveals that she is not disabled.

The law of this circuit requires that the testimony of a treating physician be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Commissioner's regulations dictate a similar preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240 (citing *Oldham v. Schweiker*, 660

F.2d 1078, 1084 (5th Cir. 1981)).

Here, the ALJ found Plaintiff could return to her past work as an accounting clerk and office manager, and that she retained the RFC to perform light work activity. Plaintiff's past work is actually considered a sedentary level position, as it involves sitting with intermittent standing and walking, and minimal lifting (Tr. 23, 67-68). This finding was based on the medical evidence and the opinions of State agency physicians who reviewed the record. Plaintiff contends that the ALJ did not give sufficient reasoning as to why he discounted the opinion of her treating physician, Dr. McCarthy. This issue warrants a detailed discussion of Plaintiff's medical history.

Plaintiff's relevant medical history begins in early 1999, when she treated with Dr. Pochcial, who noted chronic sinus infection and chest tightness with exertion (Tr. 149). At follow-up visits during the next few months, Dr. Pochcial noted Plaintiff was doing well, her rhinitis and reflux were well controlled, she was well improved, and patient stated reflux and nasal symptoms improved (Tr. 141, 132, 121). Plaintiff also treated with Dr. Fearing in mid-1999, revealing a long history of herpes and a discussion of hormone therapy. In late 1999, Plaintiff was seen at the Lundquist Chiropractic Clinic for treatment. Dr. Lundquist reported that "patient's prognosis is good" and he recommended massage therapy two times per week for the next six weeks for her cervicalcobrachial syndrome and lumbrosacral strain (Tr. 97-98).

The majority of Plaintiff's medical records come from her treating physician and rheumatologist, Dr. McCarthy. It is important to point out specifics in his records beginning in August 1999. McCarthy noted increasing arthritis problems, increasing hip pain, and an extended trip to the Florida Keys to visit with friends (Tr. 133, 140). In late 1999 he noted that Plaintiff was on several asthma medications, had swelling, pain, and stiffness in hands, had

three upcoming vacations, and Plaintiff reported feeling better than two weeks ago (Tr. 122, 132). In early 2000 McCarthy reported plaintiff was doing exceedingly well and was more physically active, had excellent, near complete rheumatoid arthritis remission on Methotrexate, she was cleaning her pool and using pruning shears above her head (Tr. 111, 113, 118). Later in 2000, Plaintiff reported ankle and wrist pain and sinus difficulty, and McCarthy noted she was to do exercises for back pain. In addition, he noted Plaintiff's upcoming one month trip to Spain (Tr. 161, 165). There do not appear to be any medical records after December 2000, with the exception of Dr. McCarthy's functional capacity assessment form, in which he opined that Plaintiff experienced pain, joint swelling, numbness, weakness, reduced mobility, fatigue, insomnia, and concentration difficulties (Tr. 21). In addition, he stated that as a result of her impairments she could lift no more than ten pounds on occasion, could sit, stand, or walk for no more than ten minutes at a time with frequent unscheduled breaks, must avoid repetitive activities, and could not be exposed to extreme temperatures, high humidity, or environmental irritants (Tr. 21). He also opined that her symptomatology impacted her daily lifestyle, social functioning, task completion, and level of concentration.

Upon review of this medical evidence, State Agency consultants opined that Plaintiff could perform a wide range of light work. Plaintiff disagreed with the state agency consultant's opinion and requested a hearing. At the hearing Plaintiff testified to living a sedentary lifestyle (Tr. 257), concentration and reading problems (Tr. 258), and problems staying in one position at a previous job (Tr. 260). The ALJ carefully considered Plaintiff's medical records and her complaints of pain. He found Plaintiff's testimony of disabling pain to be not credible, in light of numerous activities performed by her over the time period in question. In addition, the ALJ

was correct in discounting the opinions of Dr. McCarthy regarding Plaintiff's RFC. In his functional capacity assessment form, McCarthy noted several significant limitations on Plaintiff's ability to work and perform daily activities, yet those limitations are not present in his medical records and treatment notes. Of note, is that fact that throughout all of these doctor visits, Plaintiff conceded, and doctors noted, that she traveled extensively, including long trips to Spain, France, California, Las Vegas, and even a driving trip to the Florida Keys. All of this despite her subjective complaints, and contention that she could not sit for prolonged periods of time. It is difficult to understand how Dr. McCarthy reported such substantial limitations on Plaintiff's daily activities, but never once advised her to not travel. Accordingly, the ALJ's decision to discount Dr. McCarthy's RFC opinion is supported by substantial evidence.

*Conclusion*

For the reasons stated, it is hereby

ORDERED:

1. The Plaintiff's complaint is dismissed and the Commissioner's decision affirmed.

2. The Clerk is directed to enter judgment for the Commissioner.

IT IS SO ORDERED at Tampa, Florida on this 17th day of August, 2006.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of Record